IRVING FRIEDMAN, Respondent, *v.* MICHAEL MARKMAN et al., Appellants.

First Department, June 14, 1960.

58

*Maurice Gellar* of counsel (*Rosenbaum & Gellar,* attorneys), for appellants.

*William B. Aronstein* of counsel (*Richard L. Aronstein* with him on the brief; *Aronstein & Aronstein,* attorneys), for respondent.

STEVENS, J. This is an appeal by the defendants from an order which denied a cross motion to dismiss the complaint for insufficiency and granted the plaintiff's motion to strike out the affirmative defense of the Statute of Frauds.

Plaintiff, describing himself as a life insurance agent, asserts that defendants, who previously sought unsuccessfully to obtain life insurance, agreed with him that should he obtain life insurance in the desired amount they would accept the policies and pay the premiums therefor. Plaintiff alleges he did obtain policies, effective upon payment of premiums, but that defendants refused to accept them; that defendants knew he would have received commissions for 20 years; that by reason of their refusal to accept the policies and pay the premiums, he has been deprived of his commissions and he seeks damages. The answer consisted of a denial, and the affirmative defense of the Statute of Frauds.

As a general rule, proceedings upon the part of an applicant for life insurance are merely the initiatory steps to a contract,

with the agent having no power to conclude absolutely the contract of insurance. The company is free to reject the application or condition it, as here, upon the payment of all or part of the premiums. So long as the contract for life insurance is executory, the applicant may decline to accept it and no premium is due for no risk attaches (*Goldberg* v. *Colonial Life Ins. Co. of America,* 284 App. Div. 678, appeal dismissed 308 N. Y. 958). It might be noted also that in life insurance contracts payment of premiums is usually a condition precedent to the insurer's liability. An insurance agent is ordinarily the agent of the insurance company (Insurance Law, § 110, subd. 3) and must look to the insurance company for payment of his commissions (Insurance Law, § 113). He is responsible in a fiduciary capacity to his principal for all funds received or collected (Insurance Law, § 125).

The plaintiff does not allege that he was retained or employed by defendants for an agreed compensation, nor that fraud, illegal or wrongful conduct caused his damage. He may not as an agent hold the applicant liable in damages for the commissions he would have earned by reason of their refusal to accept the policies (*Monat* v. *Ettinger,* 194 Misc. 692). In the absence of consideration he is under no duty to procure a policy. By the weight of authority an agent who makes out the application for insurance acts as the agent for the insurer. (29 Am. Jur., Insurance, § 136.) And even where an agent acts to procure insurance from companies other than those he represents directly, absent contractual or statutory provision, he is the agent of the insurer and not of the insured. (29 Am. Jur., Insurance, § 138.) On that score New York law provides: "If any licensed life insurance agent who or which has received an application for a life insurance or annuity contract is unable after reasonable diligence to obtain all or any part of such insurance from the life insurer or insurers which he or it is licensed to represent, such agent may negotiate and procure such insurance, to the extent to which it is declined by such insurer or insurers, from any other authorized life insurer or insurers, with the consent of the person making such application; but no such agent shall receive any commission or other compensation for his services in connection therewith from any insurer unless he is licensed as agent of such insurer at the time he receives such compensation." (Insurance Law, § 113, subd. 3.)

This means that when an agent procures life insurance from a company other than that to which he is licensed, he may not receive commissions therefor unless (a) he has the consent

of the applicant and (b) he is licensed as agent of such insurer at the time the compensation is received. While an insurance company is forbidden to pay a commission directly to a broker, an agent is permitted to do so. But before even a claim for damages for loss of commissions could arise where an agent procures insurance from companies other than those to which he is licensed, the conditions provided for in section 113 must be met. Whether such a claim may be sustained, if advanced, is dealt with hereinafter.

The descriptive term " agent " which is used in the complaint is not necessarily determinative and its chief significance is for the purpose of statutory coverage. For while a broker is required to pass an examination on life insurance (Insurance Law, § 119) he is not licensed to act as a life insurance agent. The acts of a person and not the label attached may well determine in a practical sense and as a factual matter, the category into which the person falls. For a broker is an agent who makes contracts or bargains for a compensation, (Black's Law Dictionary [4th ed.]) and such compensation may come from either party, while the agent, in the ordinary process, looks to his principal for compensation.

In *Korn* v. *Reich* (131 Misc. 742, affd. 225 App. Div. 671) there is little doubt, despite the use of the term " agent " in the complaint, that plaintiff was in fact a broker and so considered and treated by the court. In his complaint plaintiff alleged that he was a duly authorized insurance agent, representing 10 insurance companies in the United States, that he was employed by the defendant, that thereafter he did obtain life insurance policies which were delivered to and accepted by the defendant who promised, but failed to pay the premiums for them. Plaintiff sought to and did recover as damages the amount of the first year's premium plus expenses. The court in denying a motion to dismiss the complaint said " I can see no distinction in principle between this complaint and that which was held sufficient in *Pease & Elliman, Inc.*, v. *Gladwin Realty Co., Inc.* (216 App. Div. 421)." *The Pease & Elliman* case was an action by a real estate broker to recover damages from a prospective lessee who refused to enter into a lease upon the terms to which he had agreed and which were accepted by the owner. Recovery was allowed.

In *Korn* v. *Reich* (*supra*) the court also referred to certain dicta in *Arndt* v. *Miller Daybill & Co.* (48 Misc. 612) where the court denied recovery to an insurance broker who sued the prospective insured for commissions lost by reason of its refusal to accept a certain fire insurance policy. The court (p. 613) referred

to a possible theory of damages for refusal to accept a policy and pay premiums but added "Even in such an action I can see grave difficulties in the way of recovering any substantial damages." That dicta and the analogizing of the plaintiff's activities to those of a real estate broker in *Pease & Elliman* v. *Gladwin Realty Co.* (*supra*) set the stage for the determination in *Korn* v. *Reich* (*supra*).

Indeed the brief of the plaintiff-respondent on appeal in *Korn* v. *Reich* points out, *inter alia,* "We sue here not as an insurance agent or an intervening agent, but upon an express employment by defendant to procure life insurance for him, he being a rejected and rated risk and knowing the difficulty of his obtaining insurance and further knowing of the skill and ability of plaintiff in placing sub-standard and rejected risks. Moreover we allege plaintiff 'sought out' and 'employed' plaintiff to procure the insurance in question. Whatever may [be] the rule of law where the broker (agent) acts merely as an intervening agent, it has no relevancy where the facts are as alleged in the complaint here." And the brief asserts "We are asking for no change in the law but simply that recognized legal principles be held applicable to the case of a life insurance broker."

In light of the present requirements of section 129 of the Insurance Law, absent a writing, it is unlikely that the result reached in *Korn* v. *Reich* (*supra*) would be reached today. The Revision Note of the Insurance Department points out that the forerunner of the section, former section 169, was restricted to marine insurance, but section 129 applies to all insurance. The comment notes "[I]t is customary for the broker to receive his compensation exclusively from the insurer. Any agreement by the insured to pay compensation to the broker is so unusual that it should be put in writing."

If such a requirement applies to a broker, ordinarily considered the agent of the insured, it would seem a fortiori as to an agent, ordinarily the representative of the insurer that no less should be demanded.

The statute is explicit as to the commissions to be paid a life insurance agent, and prohibits the payment of any compensation greater than that which has been determined by agreement made in advance of the payment of the premium (Insurance Law, § 213), prohibits the offering of inducements to insure by a life insurance agent, as well as the giving of rebates (Insurance Law, § 209).

If a life insurance agent be permitted to recover as damages the amount of commissions he would have received when a

prospective insured rejects a life insurance policy, the effect is to impose a limitation and nullify the hitherto recognized right of either a life insurance company or the prospective insured to cancel, reject or refuse the policy at any time until the premium is paid. For all practical purposes it is an assurance of compensation to an agent when he alleges the existence of an agreement to accept a life insurance policy, though the agent is really doing only that for which he is originally employed, or for which he holds a certificate of authority. Such a guarantee is a form of extra compensation not contemplated by and, it would seem, within the prohibition of the statute.

The action here is grounded upon an alleged agreement to accept a life insurance policy and pay the premiums therefor. The answer denies such agreement. Implicit in every application for a life insurance policy is an understanding, which might or might not be considered as rising to the stature of a promise, that the applicant will accept and pay the premiums for the desired policy. Nothing is shown here to warrant the application of another or different rule from that usually applicable to life insurance policies, viz., the right of rejection.

Moreover, if this be considered as a promise to pay the premiums for the term set in the prospective policies, as the complaint seems to allege, it would be subject to the defense raised of the Statute of Frauds. For the underlying contract which defendant allegedly breached, and from which breach arises plaintiff's claim, was one not to be performed within a year, and indeed the performance of which could not be completed within a lifetime. (Cf. *Goldberg* v. *Colonial Life Ins. Co. of America,* 284 App. Div. 678, appeal dismissed 308 N. Y. 958, *supra; Meltzer* v. *Koenigsberg,* 302 N. Y. 523; Personal Property Law, § 31, subd. 1.) The fact that death might occur within one year, or that the prospective insured (the promisor) might stop paying premiums, is not decisive. It is the endurance of defendant's liability under the contract which is the test. Plaintiff's claim under the pleadings is subject to the limitations of and rises no higher than the source of the right.

The order appealed from should be reversed, on the law, and the cross motion to dismiss the complaint for insufficiency granted, with costs to the appellant.

RABIN, J. P. (concurring). I concur in the opinion of STEVENS, J. However, with respect to the issue of the Statute of Frauds, I would go further and say this contract as pleaded is unenforcible as coming within the statute. In the prayer for damages, the plaintiff demands what corresponds to compensation he

would have received as commissions for a period of 20 years. Of course, an improper request for damage does not affect the plaintiff's claim and despite such improper claim he may receive what is found to be due him. However, the body of the complaint itself is drawn on the basis of an agreement which could not be performed within one year or which could not be completed within a lifetime. The complaint alleges that the defendants agreed to "paying the premiums" of the policy or policies secured. The words "paying the premiums" when read in the light of paragraph 9 of the complaint contemplate the paying of premiums over the life of the policy or policies and, therefore, the obligation assumed could not be performed within one year or within a lifetime.

RABIN, J. P., VALENTE, McNALLY and BERGAN, JJ., concur with STEVENS, J.; VALENTE, McNALLY, BERGAN and STEVENS, JJ., also concur in concurring opinion by RABIN. J. P.

Order unanimously reversed, on the law, with $20 costs and disbursements to the appellants, and the cross motion to dismiss the complaint for insufficiency granted, with $10 costs.